ROBERT CARSON, PROSECUTOR, v. SAMUEL KALISCH, JUSTICE OF THE SUPREME COURT, AND THOMAS J. SCULLY, DEFENDANTS.

Argued November 24, 1916—Decided November 26, 1916.

1. Section 159 of the act concerning elections (*Comp. Stat., p.* 2125), providing a procedure to obtain a recount of the votes cast at an election, applies to a contest in an election for member of congress from this state.
2. *Held, also,* that the petition for a recount set out sufficient facts to warrant an order for a recount, under *Kearns* v. *Edwards,* 28 *Atl. Rep.* 723, and that the petition was properly verified, under *Johnson* v. *Allen,* 55 *N. J. L.* 400, 401.

Before Justice KALISCH, on stipulation between counsel.

For the prosecutor, *Theodore Strong.*

For the defendants, *Thomas P. Fay* and *Lindley M. Garrison.*

The opinion of the court was delivered by

KALISCH, J. The prosecutor seeks to set aside an order made by a justice of the Supreme Court for a recount of the votes cast at the last general election for candidates for congress in the third congressional district, comprising Middlesex, Monmouth and Ocean counties, in which district the prosecutor, Robert Carson, and Thomas J. Scully, the defendant, were congressional candidates, upon the ground, chiefly, that section 159 of the act concerning elections

(*Comp. Stat., p.* 2125), under which the order was made, does not confer any power or authority on a Supreme Court justice to make such an order in relation to congressional candidates.

Section 159, *supra,* provides: "Whenever any candidate at any election shall have reason to believe that an error has been made by any board of elections or of canvassers in counting the vote or declaring the vote of such election * * *, whereby the result of such election has been changed, such candidate * * * may, within ten days after such election, apply to any justice of the Supreme Court, who shall be authorized to order and cause, upon such terms as he may deem proper, a recount of the whole or such part of the votes as he may determine, to be publicly made under his direction by the county board of elections, after due notice by such candidates to the parties interested of the time and place of such recount; and, if it shall appear upon such recount that an error has been made sufficient to change the result of such election, then such justice in case of candidates shall revoke the certificates of election already issued to any person, and shall issue in its place another certificate in favor of the party who shall be found to have received a majority of the votes cast at such election; and in case of referendums or questions shall make a certificate that the result of such election be corrected; which certificates shall supersede all others and entitle the holder thereof to the same rights and privileges as if said certificates had been originally issued by the canvassing board."

Only so much of section 159 has been quoted as is pertinent to the matter in hand.

The insistence of counsel for the prosecutor is that the legislative intent was to confine the provisions of this section to candidates for election, such as state senators, members of assembly, surrogates and other county and municipal officers who, if elected, are, under the statute, entitled to receive their certificates of election from the county board of canvassers. And, in furtherance of this view, it is strenuously argued that the clear legislative design to exclude candidates at an elec-

tion for governor, United States senator, members of congress and presidential electors, whose election under the statute is to be determined by the state board of canvassers, is made manifest by the provisions of sections 160 and 161 relating to the recount of votes, and section 164 relative to contested elections for county officers, &c.

In support of this it is contended that section 160 requires that whenever a certificate is issued by a justice of the Supreme Court, as provided in certain cases by section 159, such certificates "shall be filed with the clerk of the county or municipality in and for which such election was held;" and that such clerk shall make and certify a copy thereof and shall without delay deliver such copy to the person who shall be declared elected; and that in case of an election for senator, members of assembly, or any county officers, the county clerk shall within five days thereafter transmit to the secretary of state, at Trenton, another copy of such certificate, signed by him and attested by his official seal; and hence it is clear that the statutory machinery provided to put into effect a certificate granted after a recount had, by virtue of the provisions of section 159, is wholly inapplicable to candidates for congress, for the reasons, firstly, that the issuance of such certificate is limited to elections held in and for a county or municipality, whereas in the present case the election of a congressman was in and for a district comprising three counties; and as the declared object of such new certificate is to revoke one previously issued by the board of canvassers of the county in and for which the election was held, and since no certificate is authorized to be or was issued by the board of county canvassers to either candidate for congress and none filed with the county clerk, and further, because in such a case the vote is canvassed by the state board of canvassers and the certificate issued by the secretary of state, that, therefore, there could be no certificate on file to revoke in the office of the clerk of the county in and for which county the election was had. Secondly, that section 161 of the Election act requires the applicant for a recount either to deposit a sum of money with the clerk or give se-

curity for the payment of the expenses of such recount to the "incumbent," &c., and that by section 164 of the same act, the term "incumbent" is declared to mean the persons whom the canvassers declare elected, and that section 161, *supra,* further provides that "if it shall appear an error sufficient to change the result has been made, then the expense of such recount shall be paid by the county or municipality in and for which such election was held," and that, therefore, it is obvious that the applicant for a recount must be an "incumbent" that is declared to have been elected by the board of canvassers before he can apply for a recount, and, as the state board of canvassers are not authorized to meet for the purpose to canvass the votes cast at a general election, and to declare the result until twenty-one days after the day of election, and whereas no certificate can be issued to the successful candidate until twenty-one days after such election, it follows as a necessary conclusion that a candidate for congress is not within the purview of section 159, because that section requires that the application for a recount by a candidate shall be made within ten days after election; and that such a candidate is, also, not within the purview of the other sections above referred to, because they expressly deal with candidates elected in and for a county or municipality; whereas a congressman is elected in and for a congressional district. Concretely stated, the position taken by counsel for the prosecutor is to the effect that the issuance of a certificate of election to the successful candidate is a condition precedent to the right of a defeated candidate to apply for a recount of votes, and that in any event a candidate for congress is not within the purview of the act, and, therefore, the order for the recount made in the present case was unauthorized.

The fabric of the argument in support of this contention consists of assumptions and inferences which attempt to refute the express declarations of section 159. This section does not require, as has been assumed, that there shall be a declaration of the vote by a board of canvassers or a certificate issued to the successful candidate before an application may be made for a recount by an unsuccessful candidate for

the office, but, on the contrary, the section, in unmistakable terms, provides that an error made sufficient to change the result of the election by any board of elections or board of canvassers in counting or declaring the vote shall afford the basis of a recount. The board of elections alluded to is the board of elections of an election district and is a distinct body from the county board of elections which is also the board of canvassers for the county.

The statutory basis for a recount is either an error in the count of or in declaring the vote by a board of elections, or an error in the count of or in declaring the vote by a board of canvassers. It is, therefore, too plain to admit of any controversy that an unsuccessful candidate may before the vote is sent to the board of canvassers apply for a recount according to the express terms of the statute.

Furthermore, since the statute provides that the application for a recount may be made within ten days after the election, which limitation of time has been held to be mandatory in the Van Noort case, by Mr. Justice Minturn (85 *Atl. Rep.* 813), it is fair to presume that it was the legislative intent that the application should be made as speedily as possible, so that the error, if any, could be promptly corrected, irrespective of the fact whether the vote had been declared or not by the board of canvassers. But if the view of counsel for the prosecutor were adopted, the prime object of the act, which is to secure a recount, would be subject to be defeated, for under the Election law the board of canvassers cannot legally convene to canvass votes until six days after the election, and in large counties, like Essex and Hudson, where the boards are often required to adjourn to some future day to finish the canvass of votes, such adjournment might extend beyond the ten days' limit from the date of the election and thus render the provision for a recount inefficacious.

The provision of section 159, to the effect that where it shall appear upon such recount that an error has been made sufficient to change the result of such election, the justice of the Supreme Court shall revoke the certificate of election already issued to any person and shall issue in its place

another certificate, &c., is consistent with the views above ex-
pressed, because the legislature evidently had in mind that
there might be candidates who would apply for a recount of
the votes after the canvassing board had declared the vote
and issued the certificate to the successful candidate, and it
was manifestly to meet such contingencies that this pro-
vision was inserted in the act.

The requirement of section 160, "that whenever any such·
certificate shall be issued, &c., the same shall be filed with the
clerk of the county in and for which such election was had,"
clearly refers to certificates to be issued by the justice, under
section 159, to revoke certificates which have been issued to
county and municipal officers and does not in legal effect
exclude the existence of a right to the issuance of a certificate
in favor of a candidate at an election in whose favor no cer-
tificate was issued but who is found on the recount to have
received a majority of the votes cast. And, as there is a well-
recognized canon of statutory construction that words relat-
ing to persons of inferior rank will not be so construed as to
include persons of a superior rank, section 160 cannot, there-
fore, have the legal effect of excepting out of the operation of
section 159 candidates for congress.

The legislative design in enacting section 160 was not to
narrow the scope of the application of section 159 to any
candidate at any election, but to point out a special procedure
peculiarly applicable to candidates for county and munici-
pal offices.

And this view is equally applicable to section 161. For if
the term "incumbent" in this section is to receive the legis-
lative meaning ascribed to the term in section 164 of the act
relating to contested elections, namely, that of a candidate
who has been declared elected by a board of canvassers, it
can have no other legal effect than to regulate the procedure
of a recount in a case where a certificate of election had
already been issued to one of the candidates. That is not
the case here.

But even if it appeared that by reason of the statutory
machinery provided by the legislature to carry into effective

operation the provisions of section 159 that such machinery is inapt to an election of a candidate for congress, that would not afford a sufficient legal justification to ignore the prime object of the act, namely, that "whenever any candidate at any election shall have reason to believe that an error has been made by any board of elections or of canvassers in counting the vote or declaring the vote of such election," &c., such candidate is entitled to a recount.

It is difficult to conceive of a collocation of words more expressive of a legislative design to inaugurate a public policy in the interest of the people of this state than the language just quoted. The obvious design was to give effect to the will of the people as expressed by their votes.

This broad design would be seriously impaired if it were permitted upon unsubstantial or technical grounds to add to the statutory words "any candidate at any election" the words "for state senator, member of assembly or county or municipal office." The act, as it originally stood (*Pamph. L.* 1880, *p.* 229), did so limit its provisions to "any election in this state for member of the senate or member of the assembly," and by *Pamph. L.* 1895, *p.* 659, this was changed to "any candidate for any office," and, finally, by *Pamph. L.* 1898, *p.* 310, changed to "any candidate at any election." Some significance must be given to these changes.

No sound reason has been advanced, and it may be fairly said that none can be given, why there should be any differentiation of the will of the people, as expressed by their votes, in a congressional district or in the entire state, from that expressed in the city or county. To give it the construction contended for by the prosecutor would run the statute into the height of absurdity. In *Gage* v. *Clark*, 51 *N. J. L.* 97, a contested election case, Mr. Justice Dixon, in delivering the opinion of the Supreme Court (on *p.* 99), said: "A further argument is presented by counsel for the prosecutor, based upon the provisions of section 111 of the statute, to the effect that a successful contestant shall be 'entitled to his certificate,' and 'the certificate of election' of the defeated incumbent shall be annulled. Counsel contends that these pro-

visions are inapplicable to justices of the peace because they do not receive certificates of election, and, therefore, these officers are not embraced in any part of the law.

"But we think this conclusion is too broad for the premise. The formal annulment of an old certificate and granting of a new one are quite unimportant for any useful object at which the law aimed. It would be an unreasonable interpretation of the statute to confine its substantial enactments within the limits of these purely formal provisions. It is much more rational to assume that the legislature intended to give full effect to what was important, and overlooked the fact what was in all cases immaterial was also sometimes inapt." And *In re Stewart,* a contested election case reported in 50 *N. E. Rep.* 51, Judge Bartlett, in speaking for the Court of Appeals (on *p.* 53), said: "The object of elections is to ascertain the popular will, and not to thwart it. The object of election laws is to secure the rights of duly-qualified electors, and not defeat them. Statutory regulations are enacted to secure freedom of choice, and to prevent fraud, and not by technical obstructions to make the right of voting insecure."

It is consonant with the best judicial thought on the subject that in the construction of election laws to construe them liberally. A careful analysis of the provisions of section 159 will reveal that the section affords a complete scheme for a recount in the case of a congressional candidate.

This section applies to any candidate at any election. It authorizes, in general terms, a justice of the Supreme Court to order, or cause upon such terms as he may deem proper, a recount of the whole or any part of such votes cast at the election. As one of the terms the justice could properly order the giving of a bond by a congressional candidate to secure the payment of the cost of such recount. This section further empowers the justice, if the recount changes the result of the election, to issue a certificate to the successful candidate, &c. Whether the provisions of this section can be effectively enforced after the recount is had and decided is

not before me in this proceeding. The only question to be passed on in the present case is whether or not section 159 includes within its terms the granting of a recount in a proper case to a congressional candidate. The views herein expressed lead to the conclusion that it does. The order for a recount was therefore within the jurisdiction of a Supreme Court justice to make.

The next reason assigned for setting aside the order is that "due notice of the time and place of the recount has not been given to the prosecutor." The statute provides that a justice of the Supreme Court shall be authorized to order and cause a recount to be made under his direction, "after due notice of such candidate to the parties interested of the time and place of such recount."

The order was made on the 15th day of November, 1916, and provided that the recount should be begun on Monday, the 20th day of November, 1916. It directed that notice of the time and place of such recount be served upon the prosecutor, Robert Carson, within three days from the date thereof. It appears that it was actually served upon the prosecutor within two days from the date thereof. This constituted due notice.

Another reason assigned is that due notice of the contents of the petition has not been given to the prosecutor.

The statute on which this proceeding is founded makes no such direction.

The reason assigned that the order was not filed within due time is also without merit. The statute does not require the filing of any order. The return to the writ in this case shows that a petition for a recount and the order made by the justice of the Supreme Court were marked filed on November 15th, 1916, the day of the application for the recount. It is conceded by counsel for the prosecutor that he procured a copy of the petition on the 18th day of November, 1916, from one of the counsel of Mr. Scully. It does not appear that any injury resulted to the prosecutor by reason of the failure to have a copy of the petition earlier.

The next point urged is, that the petition is insufficient to warrant an order for a recount. An examination of the petition shows that it sets out all the facts required by section 159 to constitute the basis of an order for a recount. The cases cited by counsel for the prosecutor in support of his contention deal with contested election cases and are not applicable to petitions for a recount. In *Kearns* v. *Edwards*, 28 *Atl. Rep.* 723, there was an order for a recount, made *ex parte* by Mr. Justice Depue, with leave to the candidate interested to apply to set it aside. Upon the argument it was objected that the petition stated no facts upon which the petition was filed that an error has been made in counting the votes. The petition was held to be sufficient.

Lastly, it is objected that the petition is not properly verified.

The precise objection relied on is that the petitioner's affidavit as to the facts set out in his petition relating to acts not his own is made on belief only. This objection appears to be fully answered by what was said by Mr. Justice Dixon in *Johnson* v. *Allen*, 55 *N. J. L.* 400, a contested election case. The learned justice (on *p.* 401) said: "If the statute had prescribed verification by the oath of the contestant himself, as in *Kirk* v. *Rhoads*, 46 *Cal.* 398, it might fairly be urged that it was enough for him to swear to the best of his knowledge, information and belief, because, except in rare instances, he would be able to swear to nothing more, and it could not be supposed that the legislature had in view only such rare instances."

It is to be observed in this connection that section 159 makes no provision as to the manner in which an application for a recount shall be presented, nor does it require a verification of the facts upon which the application for a recount is made.

The writ will be dismissed, without costs.