ROBERT CARSON, APPELLANT, v. THOMAS J. SCULLY ET AL., RESPONDENTS.

(Middlesex county recount case.)

ROBERT CARSON, APPELLANT, v. THOMAS J. SCULLY ET AL., RESPONDENTS.

(Monmouth county recount case.)

ROBERT CARSON, APPELLANT, v. THOMAS J. SCULLY ET AL., RESPONDENTS.

(Ocean county recount case.)

Argued December 4, 1916—Decided January 19, 1917.

The judges being equally divided on the question whether the judgment should be reversed, the judgment is affirmed solely because of such division, which renders any opinion by the court impossible.

On appeal from the Supreme Court, whose opinion is reported in 89 *N. J. L.* 458.

WALKER, CHANCELLOR. My vote to reverse the judgment of the Supreme Court in this case is based solely upon the view that the legislature has not provided any machinery for carrying on a recount of votes cast for candidates for congress, although I find in the statute a declaration of intention that recounts shall extend to congressional elections.

The learned justice, who wrote the opinion in the court below, states the case when he says:

"The insistence of counsel for the prosecutor is, that the legislative intent was to confine the provisions of this section (159 of the act concerning elections) to candidates for election, such as state senators, members of assembly, surrogates and other county and municipal officers who, if elected, are, under the statute, entitled to receive their certificates of elec-

tion from the county board of canvassers. And, in further-
ance of this view, it is strenuously argued that the clear leg-
islative design to exclude candidates at an election for gov-
ernor, United States senator, members of congress and presi-
dential electors, whose election under the statute is to be de-
termined by the state board of canvassers, is made manifest
by the provisions of sections 160 and 161 relative to the' re-
count of votes, and section 164 relative to contested elections
for county offices," &c.

I agree with the view held by the learned justice that the
statute (*Pamph. L.* 1898, *p.* 237, § 159; *Comp. Stat., p.*
2073; *Pamph. L.* 1909, *p.* 41) evinces an intent to give to
any candidate at any election, who shall have reason to believe
that an error has been made in counting or declaring the vote
of such election, whereby the result has been changed, the
right to a recount; and to this extent, disagree with the con-
tention of counsel that the section evinces a legislative intent
to confine the provisions to candidates for the offices named;
but, as I find in the act no machinery provided for the carry-
ing on, ascertaining or certifying the result of a recount of
votes cast in congressional elections, I am constrained to the
view that no such recount can be had, not that it was not the
intention of .the legislature to give it.

There was a time in the history of our state when no re-
count of votes cast at any election could be had (except as an
incident to proceedings in a contested election before a body
authorized to inquire into and decide such a question, as the
house of representatives, which is the sole judge of the elec-
tion and qualification of its members, and the Supreme Court
on *quo warranto*, where the right to office was being inquired
into). In fact, we had no statute authorizing a recount of
votes until as late as 1880. See the supplement to "An act to
regulate elections." *Pamph. L.* 1880, *p.* 229; *Rev. Supp.. p.*
277; *Gen. Stat., p.* 1327, § 195. And this extended only to
candidates for member of the state senate or assembly.

By a supplement to the Elections act (*Pamph. L.* 1895, *p.*
659, § 13; *Gen. Stat., p.* 1367, § 369) it was provided that if
any candidate for any office shall pray a recount of the whole

or any part of the vote, by petition to one of the justices of the Supreme Court, and shall deposit such sum as the justice shall order as security for the payment of expenses, it shall be the duty of the justice to order such recount by the county board of elections under such supervision as he may order, &c., and on the conclusion thereof shall certify the result, which certificate shall take the place of that originally issued by the canvassing board. The present statute, with reference to recount of votes, is to be found in "An act regulating elections" (Revision of 1898), *Comp. Stat.*, *p.* 2073, § 159; *Pamph. L.* 1909, *p.* 41 *et seq.*, and provides that whenever any candidate at any election shall have reason to believe that an error has been made by any board of elections or of canvassers in counting or declaring the vote of such election, whereby the result has been changed, such candidate may apply to any justice of the Supreme Court who shall be authorized to cause, upon such terms as he may deem proper, a recount of the whole or such part of the votes as he may determine, to be publicly made under his direction by the county board of elections, and if it shall appear upon such recount that an error has been made sufficient to change the result of such election, then such justice, in case of candidates, shall revoke the certificate of election issued to any person and shall issue in its place another certificate in favor of the party who shall be found to have received a majority of the votes cast at such election. Section 159. That whenever any such certificate shall be issued by such justice, the same shall be filed with the clerk of the county or municipality in and for which such election was held, and the clerk shall make and certify a copy thereof and deliver it to the person who shall be so declared elected, and in case of an election for senator, assemblyman or any county officer, shall transmit to the secretary of state another copy of such certificate. Section 160. That any applicant for such recount shall deposit with the county clerk such sum as the justice shall order as security for the payment of the expenses of the recount, or if such justice shall order, shall file with the county clerk a bond to the incumbent, to be approved by the justice, in such sum as

he may require, conditioned to pay all costs and expenses in case the original count be confirmed or the result of such recount is not sufficient to change the result, and if an error sufficient to change the result has been made, the expenses shall be paid by the county or municipality in and for which such election was held. Section 161.

It will be observed that section 13 of the act of 1895, and section 159 of the act of 1898, as amended by *Pamph. L.* 1909, *p.* 41, omit mention of the offices, candidates for which may apply for a recount, while the act of 1880 expressly confined recounts to elections for state senators and assemblymen. Assuming that the recount provisions of the act of 1895 are as broad as those of the acts of 1898 and 1909, it would be quite useless to analyze them, as it is the latest statute with which we have to deal in the case at bar.

That statute (*Pamph. L.* 1909, *p.* 41), which is a supplement to the Election act (Revision of 1898), purports to amend section 159 of the act of 1898 "to read as follows," and then goes on to re-enact section 159 *verbatim et literatim,* and adds another section—section 2—which enacts that the provisions in section 159 relating to recount of votes upon any *referendum* or *question* submitted to the electors shall apply to those submitted at the last general election (1908). if applied for within thirty days after the passage of that act (1909), the time of application for which, under the provision of section 159, had expired. Therefore, the statute stands just the same, with reference to the recount of votes cast for *candidates* at elections, as though the amendment of 1909 had not been passed.

The provision in section 159, that "if it shall appear upon such recount that an error has been made sufficient to change the result of such election," the justice shall revoke the "certificate" of election already issued, &c., does not come in aid of the contention of the appellant to the slightest extent, because the word "certificates" has reference to the word "candidates," the whole clause reading, "and if it shall appear upon such recount that an error has been made sufficient to change the result of such election, then such justice

in the case of *candidates* shall revoke the *certificates* of election issued to *any person*, and shall issue in *its* place another *certificate* in favor of *the party* who shall be found to have received the majority of the votes cast at such election." The provision that in the case of *candidates* the *certificates* shall be revoked, clearly comprehends the case of recounts for more than one candidate at the same time—as, for instance, a recount before a county board of canvassers of the votes cast at an election for surrogate of the county, and of mayor, or say, alderman of a city within the county—and yet the act goes on and provides that after the *certificates* shall be revoked, the justice shall issue in *its* place another *certificate* in favor of the *party* who shall be found to have received the majority of the votes cast at the election—although *certificates* may have to be issued to *persons* as suggested. This alternate use of nouns in the singular and plural numbers, when either one or the other only should be employed, while ungrammatical, does not, in anywise vitiate the section; but, on the contrary, because the plural noun is thus employed, it cannot be laid hold of as an argument for the contention that the votes of three counties, comprising a congress district, may be ordered recounted, because a justice of the Supreme Court may make superseding *certificates* as well as *certificate,* because, as *stated,* the noun *certificates* is used only in reference to *candidates,* comprehending, plainly one *certificate* for each *candidate* obtaining a majority on a recount; and this, quite aside from the fact that congressmen get no *certificates* from county boards, but only one *certificate* from the state board of canvassers.

The popular and generally accepted meaning of language is to be applied to the construction of a statute in the absence of a legislative intent to the contrary. *Conover* v. *Public Service Railway Co.,* 80 *N. J. L.* 681. The word "any" means "one out of many * * * and is given the full force of 'every' or 'all.'" *Bouv. L. Dict. (Rawle's rev.)* 205.

In *Purdy* v. *The People (New York Court of Errors),* 4 *Hill* 384, Scott, senator, in his opinion (at *p.* 413), observes: "Johnson says that the word 'every' means each one of all, and

gives this example: 'All the congregation are holy, everyone of them. *Numbers.*' The same lexicographer defines 'any' to mean *every,* and says: 'It is, in all its senses, applied indifferently to persons and things.'"

Now, it must be perfectly obvious that when the legislature, in section 159 of the present act concerning elections, said that any candidate for any office might have a recount, &c., it meant what it said. The words define themselves and there is no room for construing them contrary to their plain and ordinary meaning. I start, therefore, with the proposition that the legislature meant to give a recount to a candidate in a congressional election. But, it must be equally obvious that a recount cannot be carried on without machinery provided for that purpose. And the act of 1898, as we have seen, provides that machinery, but restricts its operation to a recount for *county or municipal offices,* for the recount is to be had *by the county board of canvassers* and the certificate of the result is to be filed with *the clerk of the county or municipality in and for which the election was held;* and the expenses, if an error be made sufficient to change the result, are to be paid by the *county or municipality in and for which the election was held.*

Now, an election for congressman is not held in and for a county or municipality, but in and for a "district" created by the legislature, and these districts have no clerks, and no certificates of election are given congressmen-elect by any officers of their respective congressional districts; in fact, there are no such district officers.

The present act (*Pamph. L.* 1912, *p.* 912) divides the state into twelve congress districts, the one in question being composed of the counties of Middlesex, Monmouth and Ocean, called in the act the "third district." Admittedly, a single county could be constituted a district, but none is in the act mentioned, and, what is more to the purpose, several counties are subdivided in creating districts; notably the sixth, which is composed of the counties of Bergen, Sussex and Warren, and the townships of Pompton and West Milford, in the county of Passaic.

If the decision of the court below is right, then a recount of votes cast in a gubernatorial election can be had on the application of an unsuccessful candidate. This recount would have to be made upon an order of a justice of the Supreme Court, under his direction, "by the county board of elections," after due notice, &c. If made, the "county board" would have to swell into twenty-one different county boards of election and "the clerk of the county or municipality in and for which such election was held," would have to be multiplied by the total number of county clerks in the state. And all this without any legislative provision made therefor. The analogy in the case of votes cast in a congress district is entirely apposite to that of an election for governor. Furthermore, if the result were changed, how would the expenses be paid? That act (section 161) provides, as already noticed, that the applicant for a recount "shall deposit with the county clerk such sum as such justice shall order as security for the payment of such recount, or if such justice shall so order, shall file with the county clerk a bond to the incumbent, * * * and if it shall appear that an error sufficient to change the result has been made, then the expenses of such recount shall be paid by the county or municipality in and for which such election was held." As an election for governor is not held in and for a county or municipality, but for the whole state, it would be entirely impracticable to order the expenses paid in a gubernatorial contest, where the result had been changed by a recount, under the provisions for payment found in the statute, namely, *by the county or municipality in and for which the election was held,* because an election for governor is held neither for a county nor municipality, but *in every voting precinct* in the state, and, it may be said, *for* the whole state, but *not* for any county or municipality of the state. Payment of the expenses of a congressional recount by the political subdivisions comprising the district—counties and municipalities, as the case might be—where the result had been changed, in my judgment, could only be made by court action transcending construction, and amounting to judicial legislation—a thing forbidden. Whether, in case the result

should not be changed, the money deposited could be laid hold of for payment, or the bond enforced for that purpose, as a voluntary obligation (see *Emanuel* v. *McNeil*, 87 *N. J. L.* 499), need not be considered.

The scheme of a congress district recount is not workable under the provisions of the act. I do not say that such a scheme could not be made workable by legislation. On the contrary, it is plain that it could.

Ample provisions are made in the act concerning elections for contests for governor and for members of the legislature and congress. The ninth congress district is composed of the cities of East Orange and Orange, and certain wards of the city of Newark, all in the county of Essex. If an election recount were held in this district, the certificate of the justice of the Supreme Court might physically be filed with the city clerks of the Oranges, but could not be filed with the clerks of the several wards of Newark, as there are no ward clerks.

The *modus operandi* of canvassing the votes cast at elections is, shortly, as follows: The county board of elections in each county is constituted the board of county canvassers. Section 102. The members of the county board proceed to examine the statements and copies of statements of elections which shall be produced before them, and canvass and determine the votes cast at the election and make two statements of the result containing the number of votes given in each election district for any office to be filled. Section 108. Such boards deliver one of the statements, in case of an election held for members of the house of representatives or for electors of president and vice president or for governor or senator, members of assembly or any county officers, to the secretary of state. Section 110. In case of an election for one or more members of the house of representatives or electors of president or vice president or for governor, the secretary of state lays before the board of state canvassers two such statements. Section 118. The governor and four or more of the members of the senate attend at Trenton, on a certain date, for the purpose of canvassing and estimating the votes cast for each person for whom votes have been given for mem-

bers of the house of representatives or electors of president or vice president or governor, and determine and declare the person or persons who shall, by the greatest number of votes, have been duly elected to such office or offices. Section 119. The board proceeds to make a statement of the result of such election which is delivered to the secretary of state and filed by him. Section 123. And the secretary of state makes as many copies of the statement of the determination of such board as there are persons thereby declared to be elected and delivers one of the same to each person who shall be so elected. Section 127.

By this summary of the election machinery, it will be seen that no certificates of election issue to congressmen-elect by county boards of canvassers, who merely make a certificate of the result of election for congressmen as it appears returned in the several election districts, and send that certificate to the secretary of state, who lays it before the state board of canvassers, who make a determination as to who is elected to congress in any given district. There is no provision in the statute for any revocation by a justice of the Supreme Court of any certificate made by the state board of canvassers. As the certificates of election of congressmen emanate, not from county boards of canvassers, but from the state board, how can interference with the work of a county board affect the holder of a certificate from the state board?

Because there is no practical method of recounting the vote in a congress district, an apparently unsuccessful candidate is not thereby deprived of the right to show that he, and not his rival, as certified, was elected; for, as already remarked, the house of representatives is the judge of the election of its members, and our statute provides an ample method of contesting the election of members of congress. Section 153 *et seq.*

My view is, that while the legislature in the revision of the Election law of 1898 intended to provide for a recount to any unsuccessful candidate for any office at any election, upon proper showing made, which would include congress districts, it failed to provide the method whereby lawfully, step by step,

the proceeding could be effectively carried on and a definite result obtained and certified.

Sir William Blackstone, treating of the constructions of statutes, says: "Acts of parliament that are impossible to be performed are of no validity." 1 *Bl. Com.* 91. The doctrine thus expounded by the learned commentator is, by parity of reasoning, equally applicable to a part of an act which is impossible of performance, as well as to an entire act that cannot be put into operation. It has been held, in this state, that parts of acts which are unconstitutional are to be excised to the extent to which they are invalid and the rest of the act upheld, if the parts are wholly independent of each other. *State* v. *Davis,* 72 *N. J. L.* 345, and cases cited; *affirmed,* 73 *Id.* 680. See, also, *Meehan* v. *Excise Commissioners, Id.* 382, 388. It must be perfectly obvious that a provision in a statute for a recount of votes cast for a state senator is entirely independent of one for a recount in a congressional election, and that, if the latter be invalid or unenforceable, the former shall, nevertheless, stand.

In *Commonwealth* v. *Gouger,* 21 *Pa. Super. Ct.* 217, it was held (at *p.* 229):

"In the construction of statutes it may sometimes become necessary to transpose words or even to supply or strike out a word which the context shows was omitted or inserted by mistake. Instances are not lacking in the reports where this has been done in order to effectuate the intention of the legislature. But where an enactment is plain and sensible, and, according to any meaning, broad or narrow, popular or technical, which may be ascribed to the words, does not apply to the case in hand, it is not permissible for the courts to add or omit words, in order to make it so apply, even though it may be clear to them that the case is as fully within the mischief to be remedied as the cases provided for. This would be, not to construe, but to amend the law, which is within the exclusive province of the legislature. * * * When a court has gone to the verge of its power of construction, there will sometimes remain what is termed a *casus omissus*—a case within the mischief to be remedied and possibly within the general

intent of the legislature as disclosed by the act—and yet not provided for therein. In such case the legislature alone can cure the defect."

The doctrine laid down in Commonwealth *v.* Gouger is entirely apposite. I think it clear, as I have said, that the recount provision of the Election law is intended to apply to the case of a congressional election. A miscount in an election for congressmen is fully as mischievous and equally entitled to be remedied as a miscount in the case of county or municipal officers; but the enactment is so plain in providing *the method* for recounting votes cast for county and municipal candidates, and ascertaining and certifying the result, and so plainly fails to provide any such machinery in the case of candidates for congress, that it is not permissible for the courts to add or omit words in order to make the act apply to the class of candidates excluded. And, by the way, how do candidates for county and municipal offices derive their right to a recount? It is not because they are named in section 159. Yet, nobody will deny that they have the right. It is derived from the language "any candidate at any election." If this language applies to the case of a surrogate of a county and to the mayor of a city, and, certainly, it does, it equally applies to a congressman. Therefore, I repeat again, that the office of congressman is within the purview of section 159, which clearly intends to give a candidate for congress, in given circumstances, a recount; but, the act failing to provide a method for carrying on a recount and certifying to its result in the case of a congressional election, it is, to that extent, impossible of being performed.

The *casus omissus* in the statute under consideration is the lack of provision of machinery for carrying on a recount in the case of a contested election in a congress district, notwithstanding the act evinces a clear intention to give a recount in such case as well as in all others. The omission was doubtless inadvertently made, and probably came about in this way: The act of 1880, which gave a recount only to candidates for the state senate or assembly, provided for the recount being made in the particular county, with the superseding

certificate, if one were issued, to be certified by the county clerk and delivered to the person found to be elected. While in the supplement of 1895 and the Revision of 1898, the language granting recounts and restricting them to candidates for the senate and assembly, found in the act of 1880, was enlarged so as to apply to candidates for any and all offices, but the machinery for recounts, certification of the result, &c., was allowed practically to remain the same, and was not correspondingly enlarged so as apply to congressional elections, which, of necessity, require other provisions for enabling a recount to be carried on, as an election for congressman is not held in and for a county or municipality, and his certificate emanates, not from a county board of canvassers, but from the state board of canvassers, for the superseding of whose certificate of election by a justice of the Supreme Court no provision is made in the statute.

It is not an answer to say that one of the justices of the Supreme Court, upon petitions preferred for that purpose, made three several orders for a recount of the votes cast at the last general election in the counties of Middlesex, Monmouth and Ocean, respectively, for member of the house of representatives of the United States, under his direction, by the county boards of election in those counties respectively. Those orders were, in my judgment, unauthorized by the statute and should be held to be null and void.

The Chief Justice and Justices Swayze, Trenchard and Minturn and Judge Williams have authorized me to say that they concur in the views expressed in this opinion.

WHITE, J. The question is, Do the recount provisions of the act concerning elections (2 *Comp. Stat., p.* 2125) apply to an election of a congressman for the third congressional district, comprising the three counties of Middlesex, Monmouth and Ocean?

The language of the act provides for a recount. "*Whenever any candidate at any election* shall have reason to believe that an error has been made *by any board of election or of canvassers in counting the vote* or declaring the vote of such election*,*" &c.

It is urged that the court should modify this language of the legislature by, in effect, reading into it after the word "candidate" the words "for state senator, member of assembly or county or municipal officer." It is said this should be done because subsequent provisions of the act provide for the issuing of a certificate by the Supreme Court justice holding the recount in place of the certificates issued by the boards of canvassers, and as there is no certificate of election from the county boards of canvassers in elections for United States senator, member of congress, presidential electors or governor of the state, the act, it is urged, must be held not to apply to these officers. A further argument to the same effect is said to arise from the fact that a subsequent section of the act provides, with reference to the expense of such recounts, that in case a recount shall result in favor of the applicant the expense shall be borne by the county or municipality "in and for which such election was held," and that as elections for the officers above mentioned are state-wide, or, at least, congressional district-wide, this provision for the county or municipality bearing the expense is inappropriate, and therefore indicates that the act does not apply to those elections.

These reasons, it may be remarked incidentally, apply with equal force to the election, say, of an alderman from a single ward of the city of Newark, or of a ward councilman of any other municipality having ward representation in its governmental body. No certificate is issued to such alderman or councilman by any board of canvassers and the election is not municipality-wide, nor is the expense, in case of a successful recount, confined to the ward where the election and recount took place, but must be borne by the municipality-at-large. No one, however, suggests that the recount provisions are not applicable to an election of such an alderman or councilman. On the contrary, it is here conceded and urged that they are so applicable.

I take it that these certificate and expense provisions are not inconsistent with the wide scope given the act by its express language, "any candidate at any election," but that, on the contrary, they simply provide the machinery to carry out

that broad scope in conformity with the political scheme adopted by the state for holding elections. That scheme, as I understand it, is that for the purpose of holding elections there are two divisions of the state, namely, municipal and county. For all municipal officers the municipality is the political unit which holds the elections. For all other elections in the state the county is the political unit which holds such elections. In the municipality, if the election is for mayor, or in commission governed cities for commissioners, the election is municipality-wide, and if the election is for an alderman or a councilman from a particular ward or subdivision, the election is not municipality-wide; but in either case the election is "held in and for the municipality," *and is at the municipality's expense,* although in one case it is municipality-wide and in the other it is not. The municipality is the political unit in the electoral scheme of the state for holding this class of elections. In all other elections the county is the political unit to hold the elections. Where a governor is to be elected, although his office is state-wide and the election is by the voters of the entire state, the political units that hold the necessary elections are the counties, *and each county bears the expense of its own election.* The election held in each county for the office of governor of the state is in effect an election "in and for that particular county," although the office is state-wide and the result in the particular county does not in itself decide who is elected to the state-wide office. So, with reference to a United States senator and presidential electors, and, substituting the congressional district for the state, with reference to a congressman.

This view (which, like all others herein expressed, is only advanced as that of an individual member of the court and not as that of the court itself, which court, of course, in a case, as here, of a tie vote, does not decide or express any view) supplies, in my judgment, a consistent working basis for all of the provisions of the Recount Election law. It removes the alleged inconsistency of each county bearing its own successful recount expense, although more than one county is involved, and a liberal construction of the certificate

provisions (and all election laws should be liberally construed in the spirit of their enactment) would make the Supreme Court justice's certificate a substitute for the declarations of results by, or certificates of, election boards, as the case might be, so as to make a reality of the express provision of the act that the Supreme Court justice's certificate "should supersede all others and entitle the holder thereof to the same rights and privileges as if such certificates had been originally issued by the canvassing board." The change from the word "certificate" to its plural "certificates" also made by the amending act of 1909 (the present Recount act) authorizing the Supreme Court justice holding a recount to revoke the *"certificates"* of election already issued to any person, instead of to revoke the *"certificate"* of election already issued to any person, as the law theretofore read, would seem to accord with this view, and to contemplate a revoking of all records of the result of the election of whatsoever description, including all certifications thereof, and the substituting therefor of the Supreme Court justice's certificate, the same to have the effect indicated by the above-quoted language.

I think, therefore, that there is no substantial reason for, in effect, reading into the act the words "first above indicated," thereby changing the broad language, "any candidate at any election," into "any candidate for state senator, member of assembly or county or municipal office." I think such a judicial reading into the statute of these words would be particularly unjustifiable, in view of the fact that the recount provision of our Election law as it was first enacted in 1880 did contain a similar limitation in the words "wherever any candidate at any election in this state for member of the senate or of the assembly," &c., and that, subsequently, that limitation was omitted in the present act and the language was made to read *"whenever any candidate at any election,"* &c. Surely, the legislature in changing the law with reference to recounts from one applying only to "a candidate for state senator or member of the assembly" to "any candidate at any election," did something which has a very significant

bearing on what it is now suggested this court ought to read into the act.

Another indication of the wide change contemplated by the act of 1909 is found in the new provision in that act with reference to a recount in referendums, in the following language: "Whenever *any* citizen shall have reason to believe that an error has been made by *any* board of canvassers in counting the vote or declaring the result of *any* election upon *any* referendum submitted to the electors," &c.

But even in the absence of such an historical indication of the legislative intent, the language of the present act is, in my judgment, plain and certain, and therefore is not properly subject to judicial construction into anything other than what it says. As above stated, I find no real conflicting provisions in the act, but, if I did, I should still think this language "any candidate at any election" too plain for constructive modification.

"Where the purpose of the lawmakers is expressed in language so plain as to make it unmistakable, it must be interpreted by the court, as it is written without regard to its wisdom or its apparently unwise limitations."

This is the language of this court in *Island Heights and Seaside Park Bridge Co.* v. *Brooks & Brooks,* 88 *N. J. L.* 613, citing *Douglass* v. *Freeholders of Essex,* 38 *Id.* 214.

In the case of *Bullock* v. *Biggs,* 78 *N. J. L.* 63, this court notes with approval the exact words of Chief Justice Beasley in Douglass *v.* Freeholders of Essex, namely: "Where that which is directed to be done is within the sphere of legislation, and the terms used clearly express the intent, all reasoning derived from the supposed inconvenience, or even absurdity of the result, is out of place."

It is for the reasons above expressed that I have recorded my vote for affirmance of the decision of the Supreme Court upholding the applicability of the recount provisions of the Election law to the congressional election here involved.

I am requested by Justices Garrison and Black and Judges Heppenheimer and Gardner to say that they unite in the views herein expressed.

NOVEMBER TERM, 1916.      311

*90 N. J. L.*      Carton v. Trenton & Mercer Co. Trac. Corp.

For the appellant, *Alan H. Strong* and *Theodore Strong*.

For the respondents, *Thomas P. Fay* and *Lindley M Garrison*.

PER CURIAM.

The judgment under review herein is affirmed by an equally-divided court.

*For affirmance*—GARRISON, BERGEN, BLACK, WHITE, HEPPENHEIMER, TAYLOR, GARDNER, JJ. 7.

*For reversal*—THE CHANCELLOR, CHIEF JUSTICE, SWAYZE, TRENCHARD, PARKER, MINTURN, WILLIAMS, JJ. 7.