HUDSON COUNTY CIRCUIT COURT.

IN THE MATTER OF THE CONTEST OF THE ALLEGED ELECTION OF CHARLES F. STOEBLING TO THE OFFICE OF MEMBER OF THE REPUBLICAN STATE COMMITTEE FROM HUDSON COUNTY; AUGUST ZIEGENER, PETITIONER.

Decided January 5, 1938.

For the petitioner, *Julius J. Seiden* (*Harry Lane,* of counsel).

For the incumbent, *Benjamin Dowden.*

---

IN THE MATTER OF THE CONTEST OF THE ALLEGED ELECTION OF DAISY DOUGLAS TO THE OFFICE OF MEMBER OF THE REPUBLICAN STATE COMMITTEE FROM HUDSON COUNTY; JENNIE C. SMITH, PETITIONER.

Decided January 5, 1938.

For the petitioner, *Jacob J. Levey* (*Harry Lane,* of counsel).

For the incumbent, *Henry Pass.*

BROWN, C. C. J. The petitions in the above entitled matters were filed for the purpose of contesting the election of the respective incumbents and determining that those petitioners were elected to the office named. The petitions were filed under and by virtue of *Pamph. L.* 1930, *ch.* 187, *pp.* 829-833, article XXVI, paragraphs 355 to 364, inclusive, of "An act to regulate elections" (Revision of 1930), approved April 18th, 1930, with amendments thereto and supplements thereof. *Supp. Comp. Stat.* 1925-1930 §§ 565-2602A to 65-2610A. Paragraph 355 of the act provides that the nomination or election of any person to any public office or party position, or the approval of any public proposition, may be contested by the voters of this state or of any of its political sub-divisions upon one or more of nine grounds that are specified in the statute. Territorially the contest is confined to Hudson county. The petitioners are qualified to file their petitions as provided by the statute. In the primary election held in Hudson county on September 21st, 1937, the petitioner Ziegener opposed the incumbent Stoebling for the office of male member of the Republican state committee.

The petitioner Smith opposed the incumbent Douglas in the same primary for the office of female member of the same committee. The county board of canvassers declared Stoebling elected by a majority of nine hundred and ninety-seven votes and Douglas by a majority of nine hundred and seventy-one votes. At the hearing on both petitions it was agreed between all the parties that the testimony taken and motions made would apply to both petitions and thereby avoid the repetition that would otherwise occur. The petitioners in the contest relied upon the following statutory grounds:

1. Malconduct, fraud or corruption on the part of the members of the district boards, sufficient to challenge the election.

2. Illegal votes had been received, or legal votes rejected at the polls sufficient to change the result of the election.

In addition to the general statutory grounds above stated the petitioners also charged that there was fraudulent and illegal counting and tallying of votes; fraudulent and illegal marking of ballots; permitting improper voters to illegally sign the names of legal and qualified voters and to cast ballots; that many ballots were counted in favor of Stoebling and Douglas as the result of an alleged fraud and conspiracy on the part of Stoebling "and persons in concert with him, and particularly employed by him in his office as commissioner of registration of Hudson county and in concert with a large number of the members of the various district election boards in a large number of the districts." Paragraph 356 of the Election law requires, in part, that "when the reception of illegal or the rejection of legal *voters* is alleged as a cause of contest, the names of the persons who so voted, or whose votes were rejected with the election district where they voted, or offered to vote, shall be set forth in the petition, if known." Paragraph 359, in part, provides that "the proceedings shall be similar to those in an action at law so far as practicable, but shall be under the control and direction of the court, which shall hear and determine the matter without a jury." The petitions as originally filed contained charges that were mostly expressions of opinion and conclusions of the petitioners and did not contain sufficient particu-

lars or statements of fact to enable the incumbents to meet fairly the issues. Procedure is not an end in itself. It does involve the substantive rights of the parties involved. The complaint, in a civil cause of action and the petitions which are comparable in this contest, should contain a plain and concise statement of the points in issue. Facts should be stated and not conclusions of the pleader. Sufficient facts should be stated to apprise an adversary fairly of the stated facts which the pleader intends to prove. The petitions should set forth with reasonable particularity facts and circumstances sufficient to render probable any statutory ground of contest. The petitions originally filed failed to charge the elements of fraud and conspiracy. Where the reception of illegal votes was charged or the rejection of legal votes the names of the voters were not contained in the petition nor the allegation that their names were unknown. The petitions did, however, contain references to the result of a recount before the county board of election of two hundred and four-teen election districts which reduced the majority for Stoeb-ling from nine hundred and ninety-seven to one hundred and sixty votes and for the candidate Douglas from nine hun-dred and seventy-one to one hundred and twenty-three votes. This, in itself, would cause the most open mind to feel that fraud or corruption was practiced in some of those districts. The object of elections is to ascertain the popular will and not to thwart that will: to secure the rights of duly qualified electors and not to defeat them. The election laws were enacted to secure freedom of choice and to prevent fraud and corruption. Technicalities should not be used to make the right of the voter insecure. To this end paragraph 359 of the election laws provides, in part, that the court hearing the contest shall have "power to order any amendments in the petition, or proceedings as to form or substance." Duly considering the purpose of the law and the rights of voters and contestants, the court denied repeated motions to dis-miss the petitions. Amendments were allowed from time to time and the court proceeded with the hearing and by con-sent of all the parties reserved to the incumbents the right

to renew their motion to strike at the completion of the taking of testimony. At this point there was no testimony adduced to prove the charge of conspiracy against Stoebling and others and upon motion that charge in the petitions as amended was stricken. The remainder of the petitions as amended were not stricken as all motions were abandoned. Full and complete opportunity was afforded all parties to examine all the ballots and as many of the election records, including poll books and registers, as they desired. A recount of two hundred and fourteen districts having been conducted before the county board of election the mechanics of finishing before this court the tallying and inspection of the ballots in the remaining districts was undertaken and completed and thereafter poll books and registers and impounded ballots, in districts designated by the parties, were inspected and testimony taken in connection therewith. During the investigation the court communicated to counsel the well established rule that the election laws should be liberally construed so as to ascertain the will and intention of the voter. *Carson* v. *Scully,* 89 *N. J. L.* 458; 99 *Atl. Rep.* 199; *affirmed,* 90 *N. J. L.* 295; 101 *Atl. Rep.* 289. The acceptance and recognition of this fundamental by counsel during the inspection and counting of ballots as well as the inspection of the poll books and other records resulted in an investigation that was expeditious, comparatively inexpensive to the county and produced a result that was consented to by contestants and incumbents alike. There are two results that can arise out of the investigation; namely, one where the malconduct, fraud or corruption is "sufficient to challenge the result," and the other where the canvassers in counting the votes or declaring the result of the election commit errors sufficient to "change the result." The statutory limitations on the judgment of the court may be found in paragraph 362 of the Election laws, wherein it is provided, "the court shall pronounce judgment whether the incumbent or any contestant was duly elected, and the person so declared elected will be entitled to his certificate; provided, that if misconduct is complained of on the part of the members, of any district

board it shall not be held sufficient to set aside the election, unless the rejection of the vote of such district would change the result as to that office." To "challenge" is to call in question; to make doubtful. It is the finding and conclusion of this court that the petitioners have proven malconduct, fraud or corruption in the primary election under consideration sufficiently to challenge the result thereof. The petitions contain the allegation that illegal votes were received for the incumbents sufficient to change the result. The burden of proving this ground of complaint is upon the contestants. Under the law in order to change the result of the election the contestants should prove the actual casting of sufficient illegal votes for the incumbent to enable the court with reasonable certainty to determine that the rejection of such votes changes the result of the election. The contestants have not carried the burden of proof on this ground of complaint.

Descending to the particulars of the proof upon which the foregoing finding and conclusion is made, the charge was made in the petitions and in the taking of the testimony that so-called "one-day Republicans" were permitted to vote. In the fifth district of the second ward of Jersey City to the extent of thirty-four votes and in the first district of the first ward in the same city to the extent of fourteen votes. The testimony clearly showed that the appellation commonly applied to this class of voters was not justified. It is a sound American principle that a voter should be permitted to change his party allegiance. Indeed, it is considered necessary for the welfare of our country that changes of this kind should be permitted, but within the law. The testimony showed that the voters complained of had failed to vote in any primary since the year 1930 for intervals of three or four years until the primary of September 18th, 1935, when they voted for Democratic primary candidates. They did not vote again until the primary election of September 21st, 1937, when they voted in the primary election as Republicans. A period of two full years and six days had elapsed before this change of party allegiance was affected. The Election law of the

State of New Jersey in paragraph 310, section 45, provides: "A voter who votes in a primary election of a political party shall be deemed to be a member of that party until two full years have elapsed after casting such primary vote." The petitioners contended that the statutory phrase "two full years" means "two primary elections" that must take place before a voter is eligible to change his primary choice of a political party. No decision is cited as an authority. Evidently there is none. As this court views the dispute there is no room for such a strained construction. The words used in the law are clearly unambiguous. Literally and ordinarily "full" means complete to the utmost extent. The word "year" was originally used in referring to the period in which the earth completed its revolution around the sun. It is now considered in civil and religious reckoning as a continuous period of three hundred and sixty-five days with a day additional for a leap year. To depart from the long accepted meaning of the words "full" and "year" is bound to result in confusion. If the legislature intended two primaries to intervene before a change of a political choice they would have so stated in the law enacted. They evidently did not so intend, for it appeared in the investigation a bill was introduced in the legislature in the year 1937, that had for its purpose, according to its contents and the explanatory statement at the bottom thereof, the settlement of this question by requiring two primaries to elapse before a change of political choice could be affected. This bill was not enacted into law. It was passed in the senate but not in the assembly.

Thus we have the proof that the legislature as late as the year 1937 did not consider the law ambiguous or otherwise they would have enacted clarifying legislation. Since the revision of our statutes in the year 1877 there has continued as the law of this state a statutory definition of the word "year." In 4 *Comp. Stat.* 1910, *p.* 4973, § 10, it is provided as follows: "Construction of Words 'month' and 'year'— that the words 'month' and 'year' when used in any statute, shall be construed to mean a calendar month and the words 'A year' shall be construed to mean a calendar 'year.'" Our

courts have followed this statutory construction in the case of *Eatontown* v. *Shrewsbury*, 49 *N. J. L.* (at *p.* 190) ; a case involving the legal settlement of a pauper in which it was held that the words "one full year" will only be satisfied by a dwelling for the full space of one year continuously and without interruption. To a like effect is the decision in the case of *Carroll* v. *State Board of Education*, 8 *N. J. Mis. R.* 859; 152 *Atl. Rep.* 339, wherein it was held that the term three years in the school teachers' tenure of office act meant calendar and not school years. In this case the court referred to the statute of construction above mentioned and said it "is a legislative guide for the purpose of construing the language of the law-making body." This court determines that there was no corruption, fraud or illegality in the receipt and counting of the votes in question under this item of complaint except in two cases where the time elapsed was eighteen months and in those cases it was not proven for which candidates the votes were cast. The court finds and determines, as far as those two votes affect or change the result of the election, that the election officers in this particular district were guilty of malconduct, which conduct tends to "challenge the result" of the election. The petitioners contend there was evidence of malconduct, fraud and corruption in the balloting in the fifth district in the second ward of Jersey City. An examination of the ballots in this district show that the name John Volpe was written on sixty ballots in pencil as a candidate for city committeeman. His name was written in a blank space on the ballot. The voters had the legal right to insert the name of Volpe on the ballot as a candidate for the office in question. Evidently the voters who voted the ballots did not write the name Volpe thereon because the testimony disclosed that Volpe's name was written by three persons in almost an equal number of times. The officers in charge of this particular district were required to testify concerning the writing of the Volpe name. They could not account for the pencil writing. They stated the ballots were given to the voter and received from him without the name Volpe. On being required to write the name it

was apparent that the specimens of three of the officers were like the writing of the name Volpe on the ballots. There was some contradiction in part of their testimony when they testified that they rendered assistance to about twelve voters when requested and that in those cases they might have written in the name Volpe. It was evident from the conduct of these witnesses on the stand; their weak explanation of the transactions and the convincing specimen of their writing that they were not telling the truth and that they conducted the election in that district in a fraudulent and corrupt manner which had the effect of challenging the result of the election, all of which this court finds and determines so to be. While three of the officers of this district evidently were responsible for the fraud, the remaining member was a party to the wrongdoing as he placed his seal of approval of the result by signing the certification of statement of the election as required by paragraph 317 (*Supp. Comp. Stat.* 1925-1930, *p.* 593, § 65-2252A) of the Election law and by failing to obtain the affidavit of voters asking for assistance as required by paragraph 198 (*Supp. Comp. Stat.* 1925-1930, *p.* 555, § 65-1433A) of the same law and in other respects being grossly negligent in his duties as a public official. In several of the complained of ballots in this district the evidence disclosed that the polling booth was not large enough to physically comply with the statute (paragraph 198) requiring two election officers to enter the booth with a voter asking assistance. There appears to be no exception to this requirement in the law. Paragraph 188 of the Election law permits a voter to mark his ballot without the booth "by reason of his own physical disability." The evidence was to the effect that the booths in this district were similar in capacity to those used throughout the state. If a law cannot physically be complied with, of course an unintentional violation is not evidence of fraud or corruption. The proof showed that two officers and a voter of average size would have a difficult time in preparing a vote in the booth in secret as required by the statute. The modesty of a female voter whether of streamline or other proportions might well take alarm under such

statutory pressing circumstances. So far as it affects the determination of this case there appears but one transaction where the ballot was marked outside the booth. In this district there was no affidavit taken of any voter to whom assistance was rendered. There was testimony that this is not an uncommon practice at elections because of the large number of voters that appear after working hours. This provision of the law, if complied with, is a factor that contributes to an honest election. Its violation is evidence of malconduct, fraud and corruption. This court finds and determines that the officers of this district in failing to obtain affidavits of voters to whom assistance was rendered were guilty of malconduct which tended to challenge the result of the election. In this same district thirty-nine names appeared in the poll book that were distinctly dissimilar in appearance to the same names appearing in the permanent register. Several specimens of the writings of three of the election officers of this district were taken and compared with the dissimilar names appearing in the poll book. In many instances the writing in the poll book compared with the specimens furnished by the witnesses. The court finds and concludes that the election officers of this district were guilty of malconduct, corruption and fraud in causing or permitting to be inserted on the poll books the signatures of voters without authority.

There was evidence introduced to the effect that in the ninth district of the second ward, Jersey City, the name Helen Curry was written for a minor office on forty-nine ballots cast in that district. The recount showed that Ziegener received seven votes, Stoebling eighty votes, Smith seven votes and Douglas eighty-eight votes in this district which was twelve votes less than Stoebling was given credit for by the local board and was four votes less Douglas was credited by the same board. In the first district of the eleventh ward in which the original canvass of the votes showed Ziegener received seven and Stoebling thirty-seven, Smith seven and Douglas thirty-seven: the names Anne Keyes and William Stewart were written on thirty-six ballots for a minor office. In the second district of the eleventh ward where the local

board tallied six votes for Ziegener and forty-eight for Stoebling; six votes for Smith and forty-eight for Douglas, the names Thomas Evans and Mary Evans were written forty times on as many ballots for a minor office.

In those three last mentioned districts the names written in pencil was evidently done by some one other than the voter as there is a distinct similarity of signature in each ward of the names written on the ballots in the respective districts mentioned. There was no testimony adduced to prove by whom the signatures were written. Considering the small total vote cast in each district and the similarity of signatures it is quite evident that malconduct was exercised in the casting of those votes or in some other manner that was not regular and lawful. The court finds and concludes that the writing in of those names was evidence of malconduct and fraud that would tend to challenge the result of the election. In the instances where the signatures on the poll books did not correspond with the permanent register and in those cases where the name of a candidate for a minor office, was written on the ballot, the court requested that the voter be subpœnaed to testify whether or not such voter signed the poll book and if he cast a ballot for whom the ballot was cast. If there was such proof the voter could be compelled to testify for whom he voted and if he did not vote that fact could have been established. The officers of the local district boards above referred to were not subpœnaed as witnesses except from the fifth district of the second ward of Jersey City. Although the court requested this evidence to be produced it did not materialize. Besides the recount of the ballots in two hundred and fourteen districts before the county board of election, the remaining districts in the county, that is four hundred and thirty-nine, were retallied before this court with the final result that Stoebling's majority was reduced to ninety-three votes and Douglas to fifty-one votes. The final results are illuminating as Stoebling was originally declared elected by a majority of nine hundred and ninety-seven votes and Douglas by nine hundred and seventy-one votes. In the investigation before this court substantial

changes occurred that indicated something above and beyond the mistakes that are ordinarily made in counting ballots. The total number of votes cast in those districts was small. The errors discovered on the investigation showed a variance that could only occur through malconduct on the part of the officers in charge that contributed to a challenge of the result of the election in those districts and the court so finds. The following is a tabulation of those districts:

### JERSEY CITY

| | Ziegener Net Gain | Smith Net Gain | Stoebling Net Gain | Douglas Net Gain | Votes Cast |
|---|---|---|---|---|---|
| **Fifth Ward** | | | | | |
| 9th Dist . . | | | 1 | 18 | 53 |
| **Eighth Ward** | | | | | |
| 8th Dist. . . . . | 19 | 19 | | | 64 |
| 16th Dist. . . . | | | 10 | 9 | 66 |
| **Ninth Ward** | | | | | |
| 26th Ward . . | 12 | 12 | | | 27 |
| **Tenth Ward** | | | | | |
| 4th Dist. . . . . | 23 | 23 | | | 47 |
| **Eleventh Ward** | | | | | |
| 3d Dist. . . | 9 | 9 | | | 40 |
| 6th Dist. . . | 19 | 18 | | | 46 |
| **Twelfth Ward** | | | | | |
| 22d Dist. . . . . . | 9 | 7 | | | 38 |

### HOBOKEN

| | | | | | |
|---|---|---|---|---|---|
| **First Ward** | | | | | |
| 6th Dist. . . . . | | | 7 | 8 | 17 |
| **Fifth Ward** | | | | | |
| 3d Dist. . . | | | 12 | 12 | 31 |

### UNION CITY

| | | | | | |
|---|---|---|---|---|---|
| **Fifth Ward** | | | | | |
| 1st Dist. . . . | | | 6 | 8 | 25 |
| **Ninth Ward** | | | | | |
| 5th Dist. . . . . . . | | | 3 | 9 | 61 |
| 6th Dist. . . . . . . | | | 11 | 12 | 93 |

|  | GUTTENBERG | | | | |
|--|--|--|--|--|--|
|  | Ziegener Net Gain | Smith Net Gain | Stoebling Net Gain | Douglas Net Gain | Votes Cast |
| First Ward |  |  |  |  |  |
| 3d Dist. .. ..... | 9 | 8 |  |  | 7 |

|  | KEARNY | | | | |
|--|--|--|--|--|--|
| Third Ward |  |  |  |  |  |
| 3d Dist. .... ... | 8 | 7 |  |  | 276 |

From the recount held before the county board of election the result of which was offered in evidence in the investigation the following tabulation of changes indicates to the court that considering the small total vote cast in each district and the large variances between the local district board count and the county board of election recount that the variances would not have occurred if the canvass of the votes in those districts was honestly performed. The court therefore finds and determines that in the districts set forth in the schedule which follows, the officers malconducted themselves to a degree that challenges the result of the election:

BAYONNE

| Ward | District | Votes Cast | Net Change |
|--|--|--|--|
| First | 1 | 43 | 33 |
|  | 2 | 69 | 21 |
|  | 3 | 33 | 5 |
|  | 5 | 65 | 18 |
|  | 6 | 62 | 6 |
|  | 8 | 50 | 9 |
|  | 11 | 23 | 3 |
|  | 14 | 66 | 5 |
|  | 16 | 18 | 11 |
|  | 17 | 45 | 15 |
|  | 18 | 40 | 15 |
|  | 20 | 79 | 18 |

| Ward | District | Votes Cast | Net Change |
|------|----------|------------|------------|
| Second | 3 | 70 | 20 |
| | 5 | 75 | 28 |
| | 7 | 33 | 16 |
| | 8 | 24 | 8 |
| | 15 | 58 | 21 |
| | 16 | 83 | 35 |
| Third | 21 | 35 | 14 |

### JERSEY CITY

| Ward | District | Votes Cast | Net Change |
|------|----------|------------|------------|
| First | 5 | 91 | 7 |
| Second | 3 | 94 | 9 |
| | 9 | 99 | 12 |
| | 10 | 97 | 8 |
| Third | 2 | 134 | 8 |
| | 10 | 80 | 9 |
| Fourth | 4 | 77 | 8 |
| | 7 | 47 | 9 |
| Fifth | 10 | 56 | 14 |
| Sixth | 6 | 47 | 9 |
| | 12 | 78 | 33 |
| Seventh | 13 | 36 | 15 |
| | 34 | 45 | 7 |
| | 56 | 41 | 25 |
| Eighth | 21 | 153 | 13 |
| | 23 | 46 | 19 |
| | 27 | 26 | 9 |
| | 39 | 60 | 50 |
| | 42 | 22 | 5 |
| | 49 | 27 | 9 |
| Ninth | 5 | 70 | 8 |
| | 19 | 82 | 34 |
| | 20 | 42 | 18 |
| | 25 | 52 | 19 |
| | 37 | 37 | 8 |
| Tenth | 1 | 52 | 20 |
| | 17 | 31 | 11 |
| | 23 | 41 | 22 |

| Ward | District | Votes Cast | Net Change |
|------|----------|-----------|-----------|
| Eleventh | 2 | 54 | 5 |
|  | 3 | 40 | 9 |
|  | 6 | 45 | 19 |
| Twelfth | 7 | 30 | 17 |
| HOBOKEN | | | |
| Third | 9 | 28 | 4 |
|  | 8 | 73 | 47 |
| NORTH BERGEN | | | |
| First | 13 | 19 | 6 |

Note—The net change or gain in the above computations is obtained by adding the gain of one candidate to the loss sustained by the opposing candidate. In the tabulation of the third district of the first ward of Guttenberg the net change is arrived at as follows:

| | Ziegener | Smith | Stoebling | Douglas | Votes Cast |
|---|---|---|---|---|---|
| Original Tabulation | 0 | 0 | 6 | 6 | 7 |
| Gain on Investigation | 5 | 4 | 2 | 2 | |

Ziegener's gain of five plus Stroebling's loss of four equals net change of nine for Ziegener.

Smith's gain of four plus Douglas' loss of four equals net change of eight for Smith.

While the final result of the investigation, and recount before the county board, leaves Stoebling with a majority of ninety-three votes and Douglas with fifty-one votes, the testimony is overwhelming that votes in a number far greater than the majorities thus remaining were illegally cast. The number of such votes cannot, of course, be definitely ascertained, particularly in view of the omission in the testimony to not only prove fraud and malconduct but the failure to show and trace the result of that malconduct and fraud upon the vote that was cast. The evidence of malconduct, fraud and corruption on the part of the members of the district boards as herein found and determined renders the election of the incumbents very doubtful and to such a degree as to

prevent the issuance of a certificate of election to the incumbents and if the certificates are issued, to cancel the same. The findings of fact and conclusions of this court are that there was malconduct on the part of the members of the district boards hereinbefore particularly mentioned sufficient to challenge the result of the election of Charles F. Stoebling in the county of Hudson as the male member of the Republican state committee and of Daisy Douglas as the female member of the same committee. From the evidence produced before this court, the court finds and determines and concludes that the incumbent Stoebling received in the districts hereinbefore particularly referred to more than ninety-three illegal votes and that the incumbent Douglas received more than fifty-one illegal votes. The judgment of this court is

(I) That the incumbent Charles F. Stoebling is not entitled to a certificate of election to the office of a member of the Republican state committee from Hudson county.

(II) That the incumbent Daisy Douglas is not entitled to a certificate of election to the office of a member of the Republican state committee from Hudson county.

(III) That the primary election held on September 21st, 1937, in the county of Hudson to choose male and female members of the Republican state committee be set aside and for nothing holden.