JOHN L. MILLMAN, PLAINTIFF, v. EDWARD A. KELLY, COUNTY
CLERK, BURLINGTON COUNTY BOARD OF ELECTIONS,
AND BURLINGTON COUNTY COMMISSIONER OF REGISTRA-
TION, DEFENDANTS.

Superior Court of New Jersey
Law Division Burlington County

Decided October 25, 1979.

592

594

*Herbert O. Brock, Jr.* for plaintiff.

*M. Jefferson Davis* for defendant Edward A. Kelly, County Clerk.

Burlington County Board of Elections and Burlington County Commissioner of Registration, appearing *pro se.*

HAINES, J. S. C.

John L. Millman, the 1979 Democratic candidate for the office of Burlington County Clerk, sues Edward A. Kelly, the incumbent Republican County Clerk, also a candidate this year, the Burlington County Board of Elections and its Commissioner of Registration. He seeks to restrain the distribution of approximately 172,000 sample ballots and the use of 1,200 ballots to be inserted in voting machines ("official" ballots), all of which have been printed. He would require all of these ballots to be reprinted, alleging numerous violations of the Election Law pertaining to their wording and arrangement.

These proceedings were commenced on October 23, 1979 although plaintiff had been aware of the facts on which he relied on October 5, 1979. At the conclusion of the hearing on October 25 the parties were provided with an oral decision and the promise that this opinion would follow promptly. Time considerations made an immediate determination imperative; sample ballots must be mailed on October 31, 1979. *N.J.S.A.* 19:14–25.

Copies of the 1979 sample ballots, official ballots and absentee ballots for Burlington County were introduced into evidence, together with a number of sample ballots used in this county and in other counties in past years. Examination of these documents makes it immediately apparent that all of them contain errors and omissions constituting violations of our Election Law, requiring consideration of reprinting problems. A

detailed analysis of the statutory derelictions appears at the end of this opinion.

Jack Armshire, the election printer employed by Burlington County since 1942, testified that his firm could print 172,000 new sample ballots in eight days. Aubyn Cardenas, whose highly automated firm prints ballots for Camden County, said that the work could be completed within five days, provided basic materials already assembled were available. Representatives of the Board of Elections were of the opinion that mailing of ballots could be completed in five days and, if extra equipment and personnel were employed, in half that time, assuming there were no machine breakdowns. Mailing activities could be carried on simultaneously with printing work since some ballots would be completed and delivered each day. 1200 voting machine ballots are required in Burlington County. It was agreed that reprinting them in time for the general election presented no problem. The cost of reprinting all ballots was estimated at $30,000 to $40,000.

Only six days remain within which to meet the October 31 mailing deadline. The election will be held in 12 days. The Cardenas firm could be employed responsibly only after a reasonable investigation of its capacity is undertaken and a contract negotiated. Its five-day printing goal could be realized only if it uses materials assembled by Armshire, a problem not explored. Deadlines depend in part upon the number of ballot changes required, an unknown factor at the time of the hearing. Unexpected events, such as equipment failures, may cause delay. The picture is one of considerable uncertainty. If sample ballots are required to be reprinted they may not be ready by the mailing date and may not reach voters within time to provide voting information before the election.

*N.J.S.A.* 19:14, regulating official and sample ballots generally, and *N.J.S.A.* 19:49, regulating machine ballots, are the basic statutes which control this litigation. The challenged ballots reflect violations of both chapters. The statutory scheme

presents difficulties. It is apparent that many of the provisions of Chapter 14 were drafted for application to paper ballots [1] and remain in force although such ballots are no longer in use anywhere in the State of New Jersey.[2] Chapters 14 and 49 must nevertheless be read together. *Axtell v. Caputo,* 85 *N.J. Super.* 80 (App.Div.1964). *N.J.S.A.* 19:49–1 provides: "Official ballots of the form and description set forth in this subtitle for use upon voting machines shall be prepared and furnished in the same manner as now provided by law." *N.J.S.A.* 19:49–2 provides: ". . . The providing of the official ballots and the order of the precedence and arrangement of parties and of candidates shall be as now required by law . . .." While Chapter 49 contains some instructions for printing and arranging the machine ballot, most of this information is found in Chapter 14, which was the law in existence when Chapter 49 was adopted. Furthermore, the Legislature amended Chapter 14 on September 13, 1979, *L.*1979, *c.* 191. It must be presumed that it knew no paper ballots were in use in New Jersey, that its new legislation could apply only to machine ballots, and therefore it must have intended that application. The failure to revise these statutes to reflect modern election practices makes it necessary to pick and choose among their various provisions in order to determine those which are appropriate to machine ballots. Thus, in *Axtell v. Caputo, supra,* the court held that a machine ballot authorized by Chapter 49 must be prepared in accordance with the directions of *N.J.S.A.* 19:14–12. *In re Borough of South River,* 26 *N.J.Super.* 357 (Law Div.1953), however, held that *N.J.S.A.* 19:14–4 applied only to paper ballots.

---

[1]For example, *N.J.S.A.* 19:14–3 provides for ballots with detachable coupons to be torn off by officials in charge of the "ballot box" on election day.

[2]This information was supplied through the testimony of the deputy county clerk who had gathered appropriate statistics.

*N.J.S.A.* 19:14–20 applies here and provides:

> When it shall appear that an error or omission has occurred in the copy prepared by the county clerk for the printer or in the printing of the ballot by any county clerk, any voter resident in the county may present to a judge of the Superior Court assigned to the county a verified petition setting forth such error or omission; and such judge being satisfied thereof, shall thereupon summarily, by his order, require the county clerk to correct such error or show cause before the judge at the shortest possible day, why same should not be corrected. The county clerk shall correct the same by causing new ballots to be immediately printed in place of those found to be inaccurate or incomplete; and those found to be inaccurate or incomplete shall be immediately destroyed.

The ballots presented here contain errors and omissions. If § 20 is mandatory, I have no discretion and must allow the requested order.

The question is one of legislative intent. Whether a statute is mandatory depends on whether the directed act is essential to that which is required, and what is essential must often be ascertained by judicial construction. *Sharrock v. Keansburg*, 15 *N.J.Super.* 11, 17 (App.Div.1951). The basic concern is whether deviations from statutory requirements are so significant as to prevent full expression of the popular will. *Wene v. Meyner*, 13 *N.J.* 185, 196 (1953). These cases dealt with errors discovered *after* elections had been held. Here, the election is 12 days away. No case has been found which deals with similar circumstances. However, the closeness of the election and the uncertainty as to whether sample ballots (as opposed to official ballots) can be reprinted in time makes it advisable to consider the existing sample ballots as the only ones available; if they are not mailed, no sample ballots will be available to voters. The errors which they contain must be viewed in the same manner as they would be if not discovered until after the election. Therefore, the rules established in post-election cases are applicable here with respect to the sample ballot problem.

■ The sample ballot is the only nonpartisan, legislatively-sanctioned document informing the public about candidates and public questions to be voted upon. Its importance is obvious and has been underlined by our courts. *Michaels v. Johnson*, 33 *N.J.Super.* 77 (App.Div.1954). Failure to send that ballot out would adversely affect the free expression of voting intentions; it holds the capacity to vitiate the entire election. This potential consequence must be weighed against the effect of supplying the electorate with ballots which do not follow statutory requirements as to printing and composition. Such ballots should not be used if their content would be likely to mislead. They would be worse than no sample ballots at all. The errors in the sample ballots before me, fully set forth below, are not that serious. They provide complete and accurate information notwithstanding their failure to meet numerous statutory requirements. They are not calculated to confuse the voter. They have been used in nearly identical form in Burlington County for many years without complaint. Other counties have used ballots with similar errors and omissions. No reported case has challenged such use. Statutory ballot provisions other than those of concern here have been held to be directory and not mandatory. *Wene v. Meyner, supra; Sharrock v. Keansburg, supra; A. G. v. Belleville*, 81 *N.J.L.* 200 (Sup.Ct.1911). I hold that the provisions of the statutes violated here fall within the same category, *i. e.*, they are directory only. The use of the sample ballot, as printed, will not invalidate the election. It falls within that class of omissions aptly described in *Wene v. Meyner* :

> . . . Acts and omissions by the district board mandatory before election may for reasons of policy be deemed directory after the election, if it indubitably appears that the election result was not thereby prejudiced. The question is essentially one of fairness in the election. An election is not vitiated by the defaults of the election officers not involving malconduct or fraud, unless it be shown that thereby the free expression of the popular will in all human likelihood has been thwarted. [13 *N.J.* at 196]

■ One additional consideration dictates the conclusion that plaintiff's challenge must fail. He knew of the ballot problems on October 5, 1979. He did not file his complaint until October 23, 1979, 18 days later. Time is crucial in connection with the preparation and mailing of ballots, and the loss of 18 days weighs heavily against plaintiff in considering the validity of his suit. Failure to act promptly in election cases has been a basis for denying relief. *Michaels v. Johnson, supra.* Had plaintiff acted promptly, time concerns would have disappeared. I conclude that his application was not timely insofar as the sample ballots are concerned.

■ The official ballots occupy a different position. It is clear that they may be reprinted and inserted in the voting machines well before the general election is held. Considerations applying to the sample ballots do not apply to them. The mandatory-directory dichotomy is not subject to the same analysis. The statutory provisions can be followed and therefore should be followed; as to the official ballots, they are mandatory. They exhibit several statutory derelictions. *N.J.S.A.* 19:14–13, as amended on September 13, 1979, requires the order in which public questions must appear on the ballot to be (1) state questions, (2) municipal questions and (3) county questions. All three classes of questions appear on the ballot. While the statute is not explicit, it is clear that all questions should be in the same column.[3] These directions were not followed. The state questions appear first in the extreme right-hand column, followed by the county questions; the municipal questions are printed at the bottom of the extreme left-hand column, below the municipal office designations, with the "yes" and "no" blocks at the bottom of the column headed "Democratic" containing the names of the candidates. The county clerk and county printer considered the arrangement to be better than

---

[3]The problem this may present when so many questions are presented that they cannot be accommodated by the voting machine is not addressed.

that required by law because it grouped municipal questions with municipal candidates and enabled the length of the ballot to be shortened, saving money. These reasons provide no persuasive argument for ignoring the statute. It is also a requirement that *all* public questions be printed in red on the official ballot. *N.J.S.A.* 19:49–2. Here, this was done with respect to state and county questions; the municipal questions are black. The heading of the public questions column is required by *N.J.S.A.* 19:14–14 to read: "Public Questions to be voted upon." This instruction was disregarded; the heading reads: "State Public Questions to be Voted Upon." The same section of the statute provides precise language for the voting instructions which must appear at the top of the public questions column. The language printed on the ballots before me is entirely different. The official ballot must be reprinted to correct all these errors.

It is argued that only seven election districts require new sample ballots since those are the only districts considering municipal questions and those questions reflect the only serious disarrangement of the ballot. This argument ignores the significance of the misdirections heading the public question column which affect all official ballots and also suggests that the court has the discretion with which to overlook statutory violations. I have concluded that such discretion does not exist.

The fact that the official ballot will appear in a somewhat different form than the sample ballot does not affect the result. The differences are not so significant as to mislead the voters. It is only when matters of substance, not appearing on the sample ballot, are *added* to the official ballot that this becomes a problem. *Botkin v. Westwood*, 52 *N.J.Super.* 416, 424 (App.Div.1958).

Three other seeming errors on the official ballot are noted. *N.J.S.A.* 19:14–14 sets forth specific instructions for the arrangement of "yes" and "no" blocks. The uncontradicted testimony was that these directions could not be followed when using a machine ballot. Under the circumstances, I conclude

that these provisions were intended to apply to paper ballots only. The same conclusion must be reached with respect to the requirement of the same section of the statute, even though it was amended this year, that the voter "mark a cross ✕ or a plus + in the square." The voting machine allows only a cross ✕ to be used and the reference to a "plus +" should not appear on the ballot. Finally, *N.J.S.A.* 19:49–2 limits the description of public questions to six words. State question No. II is headed by an eight-word description. This wording was certified to the county clerk by the Secretary of State. Presumably, it appears in every election district in New Jersey. A change in this language, which offers no prospect of confusing the voter, is a practical impossibility at this late date. Consequently, I treat the error on the same basis as I have treated those appearing on the sample ballots; it involves only a directory provision of the statute and need not be changed.

My conclusion concerning the sample ballots does not eliminate the need for directions concerning the form those ballots must take in the future. The errors which escaped an injunction this year must not be repeated. The county clerk, except in minor instances, has no discretion with respect to the statutory provisions. *Axtell v. Caputo, supra.* I have addressed the errors contained in the official ballots. Those which appear on the sample ballot must be set forth for the purposes of this opinion and as future guidelines.

(1) Matters relating to *N.J.S.A.* 19:49–2:

(a) This section requires that ". . . above any public question to be voted upon by the voters of the entire State there shall be printed . . . a description of the public question, which description shall not exceed six words and shall be printed in type as large as is practical." State Public Question No. II on the ballot is described as "New Jersey Higher Education Facilities Construction Bond Issue," a description containing eight words. This description was certified to the county clerk by the Secretary of State, who is not a party to these proceedings. The clerk cannot be expected to revise the

language and should not do so since the question should appear in the same form on all ballots throughout the State. The description is not misleading, and I have not required it to be changed on the official ballot by reason of time considerations. The state authorities are as bound by the legislation as county authorities; errors on their part should be brought to their attention.

(2) Matters relating to *N.J.S.A.* 19:49–4:

■ (a) The sample ballot is to "be arranged in the form of a diagram showing such portion of the face of the voting machine as it will appear after the official ballots are arranged thereon or therein for voting on election day." This section also requires these ballots to be printed in the form of a "facsimile of the face of the machine . . . ."

The sample ballots in evidence do not contain any column for personal choice although this must appear on the official ballot. *N.J.S.A.* 19:14–6. They must be corrected.

■ (b) The words "Official General Election Sample Ballot" must appear on the reverse side of the ballot when it is folded. The 1979 ballot contains the heading "General Election Sample Voting Machine Ballot." This language appears twice on the ballot and must be corrected in both places.

■ (c) The reverse side of the ballot, when folded, must state, "In cases where the sample ballot is to be sent to an addressee who does not receive his mail by delivery to his home, or through rural free delivery 'if not delivered within 5 days return to the Commissioner of Registration' and in all other cases 'if not delivered within 2 days return to the Commissioner of Registration'. Do not Forward, Return Postage Guaranteed" over the return address of the Commissioner of Registration. Additional words are permitted which conform to the United States Postal Regulations. The 1979 Burlington County ballot contains the language, "If not delivered in 5 days return to County Board of Elections" and "Do Not Forward." The exact statutory language must appear on the ballot.

**(3) Matters relating to *N.J.S.A.* 19:14–2:**

(a) This section provides that "the name of a candidate shall appear but once upon the ballot for the same office." The candidate's column on the ballot reflects the name of the defendant as Republican candidate for county clerk. In addition, a facsimile of his signature appears in the upper lefthand corner of the sample ballot under the designation of the election district, and his name appears a third time on the reverse side of the ballot, when it is folded, as follows:

For Absentee Voting Information

Call Edward A. Kelly, Jr., County Clerk
Phone 267–3300 (Ext. 377)

Plaintiff objects to the name of the clerk appearing except in the candidate's column. *N.J.S.A.* 19:14–4 directs the use of the facsimile signature of the county clerk on the ballot and its appearance is therefore unassailable. However, no statute directs the printing of the county clerk's name on the outside of every ballot mailed. The practice is defended by him on the ground that he is performing a public service for those desiring absentee ballots. It is obvious, however, that the same public service could be performed without the use of his name, a reference to the title of the office being sufficient. Aside from this, while the county clerk has discretion in matters relating to the ballot when necessary legislative directions have not been provided, *Quaremba v. Allan,* 67 *N.J.* 1 (1975), that rule provides no license for his addition of unnecessary material. The Legislature has required publication of notices to absentee voters containing voting instructions, *N.J.S.A.* 19:57–7; it has not called for the printing of such information on the ballot. I conclude that all material relating to absentee voting information and the name of the county clerk must be removed from future ballots.

**(4) Matters relating to *N.J.S.A.* 19:14–6:**

■ (a) Voting instructions are required to appear at the head of each column on the ballot. From the evidence presented it appears that the voting machines cannot accommodate this arrangement. Instead, they provide voting instructions on a permanent plate at the top of the ballot, except in the case of public questions. I conclude that this provision applies only to paper ballots and is without substance here.

(5) Matters relating to *N.J.S.A.* 19:14–13:

(a) The order of public questions on the ballot shall be, first, state questions, second, municipal questions, and third, county questions. The language is not explicit, but it is reasonably interpreted as requiring all questions to be in a single column. Otherwise, directions concerning column headings present difficulties. On the 1979 Burlington County ballot the clerk printed the state questions first and county questions second in a single column to the extreme right of the ballot. He printed the municipal questions in a column to the extreme left of the ballot, under the designations of the offices to be filled. Votes on municipal questions would be cast by pulling levers in an adjoining column containing candidates' names and headed by the word "Democratic." This is entirely contrary to the statute, as amended on September 13, 1979, and must be changed to comply with the controlling legislation.

■ (b) The column containing public questions must be headed by the words "Public Questions to be Voted Upon." This language does not appear on the 1979 ballot. Instead, the question column is headed by the words "State Public Questions to be Voted Upon." This must be corrected.

I do not find any impropriety in further heading each class of questions with the words "State Public Questions," "County Public Questions" and "Municipal Public Questions," thus improving the clarity of the ballot in a manner which is within the discretion of the county clerk, there being no statutory directions in this respect.

(c) Voting instructions must appear in the question column, below the words "Public Questions to be Voted Upon." These

instructions are: "To vote upon the Public Questions printed below, if in favor thereof mark a cross ✕ [or a plus +] in the square at the left of the word 'Yes' and if opposed thereto, make a cross ✕ [or a plus +] in the square at the left of the word 'No'." The bracketed words, while contained in the statute, should not be used; no plus marks appear on Burlington County's voting machines. Otherwise, the voting instructions which appear on the 1979 sample ballot are not in statutory language and must be changed.

(6) Matters relating to *N.J.S.A.* 19:14–22:

■■■ (a) This section requires sample ballots to be of a color different than the official ballots and to contain at the top the words "This ballot cannot be voted. It is a sample copy of the official general election ballot used on election day." It is obvious that these provisions, adopted in 1930 and amended in 1959, relate to paper ballots only. There is no possibility of sample ballots being voted when machines are in use. Color coding is not necessary; the ballots inserted in the machines cannot be confused with sample ballots. These directions may be ignored.

Costs to plaintiff.